**This order is SIGNED.**

**Dated: January 8, 2024**



KEVIN R. ANDERSON
U.S. Bankruptcy Judge

slo

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF UTAH

| | |
|---|---|
| In re:<br><br>BRIDLE PATH PARTNERS, LLC,<br><br>Debtor | Bankruptcy Number: 23-23960<br><br>Chapter 11<br><br>Hon. Kevin R. Anderson |

## MEMORANDUM DECISION

Debtor Bridle Path Partners, LLC owns almost 900 acres of raw, mountain property in Cache County, Utah, and is in the process of obtaining final plat approval for an equestrian community consisting of 130 lots along with open space, trails, and riding facilities. The Debtor filed under Subchapter V of Chapter 11, but the U.S. Trustee has challenged the Debtor's qualification to proceed under this subchapter on the grounds that this is a single asset real estate case. After conducting an evidentiary hearing, the Court now issues the following Memorandum Decision finding that the Debtor is precluded from proceeding under Subchapter V pursuant to 11 U.S.C. § 1182(1)(A).[1]

---

[1] Unless otherwise specified, subsequent statutory references are to U.S. Code, Title 11. This Memorandum Decision constitutes the Court's findings of fact and conclusions of law pursuant to Fed. R. Civ. P. 52(a), made applicable to this contested matter by Fed. R. Bankr. P. 9014 and 7052. Any of the findings of fact herein are deemed, to the extent

I. **FINDINGS OF FACT**

    A. <u>Procedural History</u>

    1.    On September 8, 2023 (the "Petition Date"), Bridle Path Partners, LLC ("Debtor") filed its voluntary petition for relief under Subchapter V of Chapter 11 of the Bankruptcy Code.

    2.    On the Petition Date, the Debtor filed its Statement of Financial Affairs ("SOFA") and Schedules, listing an ownership interest in seven parcels of real property encompassing 889 acres of mostly undeveloped mountain land near Wellsville City, Utah (the "Property"). The Debtor listed the value of the Property at $13,000,000.[2]

    3.    The Debtor purchased the seven parcels of the Property on different dates, from different owners, and using different funding sources.[3]

    4.    The Debtor's 2022 tax return lists its "Principal Business Activity" as "Real Estate" and identifies its "Principal Product or Service" as "Real Estate."[4]

    5.    On Schedule G, the Debtor lists a farming lease covering approximately half of the Property with a remaining term of approximately two years.[5]

    6.    The Debtor's SOFA lists $0.00 in income for 2022 and 2023 to the Petition Date.[6]

    7.    On September 25, 2023, the U.S. Trustee filed its objection, alleging that this is a single asset real estate case under § 101(51B) ("SARE"); therefore, pursuant to § 1182(1)(A), the Debtor is not eligible to proceed under Subchapter V.[7]

---

appropriate, to be conclusions of law, and any conclusions of law are similarly deemed to be findings of fact, and they shall be equally binding as both.
[2] ECF No. 2, at 5.
[3] ECF No. 20, ¶ 6(a)-(d).
[4] ECF No. 1, at 6.
[5] ECF No. 2, at 26; ECF No. 34, ¶ 6. At the evidentiary hearing, the Court admitted into evidence the stipulated facts contained in ECF No. 34.
[6] ECF No. 2, at 28.
[7] ECF No. 11.

8.　　On October 12, 2023, the Debtor filed its response, asserting that this is not a SARE case because (1) the Property is not a single project within the meaning of § 101(51B), and (2) the Debtor intends to conduct various other businesses on the Property after its development as a recreational community.

9.　　On December 7, 2023, the Court conducted an evidentiary hearing on the U.S. Trustee's objection. At the conclusion of the hearing, the Court took the matter under advisement.

B.　The Bridle Path Estates Development

10.　　On May 19, 2021, the Debtor submitted its Subdivision Application to the Wellsville City Planning Commission for the Bridle Path Estates "residential development."[8] In support of its application, the Debtor submitted at various times to Wellsville City an Overall Master Plan Map dated October 11, 2022, a Concept Plan Map dated March 2021, and a Reclamation Plan Map dated October 4, 2023 (collectively, the "Bridle Path Maps").[9]

11.　　The Bridle Path Maps contemplate an equine-centric residential development consisting of around 889 acres[10] with a proposed 130 residential building lots on approximately 449 acres to be developed in five phases consisting of luxury homes, median-income homes, and rental homes. The maps also provide for around 440 acres of open space with an indoor horse arena, outdoor corrals, and riding and hiking trails to support equine ownership, lodging, and recreation (the "Equine Amenities").[11]

12.　　As part of the Wellsville City approval process, the Debtor also submitted plans for the Bridle Path Estates Homeowners Association ("HOA"), which included the Bridle Path Estates

---

[8] Ex. 2.
[9] Ex. 3.
[10] *Id*. at Bates No. 10.
[11] *Id*.

Homeowners Association Covenants, Conditions & Restrictions, and the Bridle Path Estates Homeowners Association Bylaws.[12]

13. The HOA will own and operate the Equine Amenities, but for the first seven years, or until 80% of the lots are sold, the Debtor will manage the HOA and receive any profits from the Equine Amenities.

14. The Debtor also submitted a Statement of Intent detailing the Recreational Planned Development of Bridle Path Estates.[13]

15. On January 19, 2022, the Debtor received preliminary approval from Wellsville City for Bridle Path Estates with certain conditions to be satisfied before receiving final approval.[14]

16. Since December 1, 2021, the Property has been subject to a broader water moratorium due to recent drought conditions. The present iteration of the water moratorium is set to expire on April 15, 2024.[15]

17. The Debtor cannot obtain final plat approval until the water moratorium is lifted, but the Debtor and Wellsville City are working to resolve this issue.

18. The Debtor's representative testified that by Summer 2024, he anticipated that the water moratorium would be lifted, final plat approval would be granted, and the Debtor would start selling lots.

---

[12] Exs. 4-5.
[13] Ex. 6.
[14] Ex. 7, at Bates No. 145.
[15] Ex. 11, at Bates No. 154.

## II.  ANALYSIS

### A.  The Consequences of Being a SARE Debtor

In filing its petition, the Debtor elected to proceed under Subchapter V of Chapter 11. Congress added Subchapter V to Chapter 11 of the Bankruptcy Code to facilitate a more expeditious and economical reorganization process for smaller business debtors. Specifically, Subchapter V offers qualifying debtors certain benefits, such as no quarterly fee to the U.S. Trustee, no creditors' committee, no disclosure statement, no competing plans, and no absolute priority rule. However, § 1182(1)(A) expressly excludes from Subchapter V a debtor that owns "single asset real estate," as that term is defined by § 101(51B). Further, § 362(d)(3) requires that a SARE debtor must satisfy one of two requirements, or secured creditors can readily obtain relief from stay. These requirements are: (1) the debtor files a plan within 90 days of the petition date that has a reasonable possibility of being confirmed within a reasonable time; or (2) the debtor commences making monthly interest payments to secured claim holders.[16] It is thus not surprising that a debtor with significant real estate holdings would prefer to avoid the designation as a SARE debtor both to avoid the requirements of § 362(d)(3) and to be able to proceed under the more expeditious and economical provisions of Subchapter V.

### B.  Revocation of a Subchapter V Designation When It Is a SARE Case.

Bankruptcy Rule 1020(b) allows the U.S. Trustee or a party in interest to raise an objection to a debtor's designation under Subchapter V within 30 days after the first meeting of creditors, or after any amendment to such designation, whichever is later.[17] The U.S. Trustee timely filed its

---

[16] Section 362(d)(3).

[17] Fed. R. Bankr. P. 1020(b); *see also In re CYMA Cleaning Contractors Inc.*, No. 22-01377 (ESL), Bankr. LEXIS 2637, 2023 WL 7117445 (Bankr. D.P.R. Oct. 27, 2023) (holding that a bankruptcy court has the power, in appropriate circumstances, to revoke a debtor's Subchapter V designation even if such is not specifically provided for in the Bankruptcy Code).

objection to the Debtor's designation as a Subchapter V debtor based on the assertion that this is a SARE case. If the Court finds that the Debtor does not qualify under Subchapter V, it may revoke the Debtor's designation but allow it some time to determine whether to proceed under Chapter 11, convert to Chapter 7, or dismiss its case.

The term "single asset real estate" is defined by § 101(51B) in relevant part as "a single property or project . . . which generates substantially all of the gross income of a debtor . . . and on which no substantial business is being conducted by a debtor other than the business of operating the real property and activities incidental thereto." Courts in the Tenth Circuit and elsewhere have applied the following three-part test to determine if a debtor is subject to the SARE requirements: "(1) [t]he property must be a single parcel or project; (2) [t]he property must generate substantially all of the debtor's income; and (3) [t]he debtor cannot conduct any substantial business other than operating the property."[18] All three requirements must be met in order for a debtor to be subject to the SARE designation.[19] The parties have stipulated that the second and third requirements are undisputed, such that the only issue before the Court is whether the Bridle Path development constitutes a "single project."

Whether real property constitutes a "single property or project" is a question of fact.[20] When determining whether multiple parcels constitute a single project, "[t]he mere fact of common ownership, or even a common border, will not suffice."[21] Instead, "the properties must be linked together . . . in a common plan or scheme involving their use."[22] Of primary consideration is

---

[18] *In re Kachina Vill., LLC*, 538 B.R. 124, 127 (Bankr. D.N.M. 2015) (collecting cases).
[19] *In re Aspen Club & Spa, LLC*, No. 18-14158-JGR, 2019 Bankr. LEXIS 2825, at *7, 2019 WL 4233621, at *3 (Bankr. D. Colo. July 23, 2019) (citing *In re Scotia Pac. Co., LLC*, 508 F.3d 214, 220 (5th Cir. 2007)).
[20] *In re Nuovo Ciao-Di, LLC*, 650 B.R. 785, 788 (Bankr. S.D.N.Y. 2023) (citations omitted).
[21] *In re McGreals*, 201 B.R. 736, 742-43 (Bankr. E.D. Pa. 1996).
[22] *Id.* at 742.

"whether the debtor treats its property as a single project or property by virtue of a common plan or purpose."[23]

The Debtor bears the burden to show that the Bridle Path development is not a single project. While the U.S. Trustee asserts that this case should proceed as a SARE case, its objection, at its core, opposes the Debtor's election to proceed under Subchapter V. Because the burden of proof is on the Debtor to establish its eligibility for Subchapter V relief,[24] it must prove that it does not meet the SARE definition.

C. The Bridle Path Estates Development

In this case, the Debtor's Property consists of approximately 889 acres acquired as seven parcels at different times, from different sellers, and with different funding sources. However, the parcels are contiguous but for a highway that bisects the Property. In May 2021, the Debtor submitted its Subdivision Application to develop 131 residential building lots on the Property under the name of "Bridle Path Estates."[25] On January 19, 2022, Wellsville City granted preliminary plan approval for the Bridle Path Estates. The Bridle Path Estates Concept Plan Map dated March 2021 and the Overall Master Plan Map dated October 11, 2022,[26] show the proposed locations of the lots, which will be developed in five phases consisting of luxury homes, median-income homes, and rental homes. The Planner's Staff Report for the May 10, 2023 planning meeting classifies the Bridle Path Estates as a "Recreational Planned Development" under Chapter 30 of the Wellsville City Code.[27]

---

[23] *In re JJMM Int'l Corp.*, 467 B.R. 275, 278 (Bankr. E.D.N.Y. 2012) (citations omitted).
[24] *In re Offer Space, LLC*, 629 B.R. 299, 304 (Bankr. D. Utah 2021).
[25] Ex. 2.
[26] Ex. 3.
[27] Ex. 8.

The Debtor's Statement of Intent[28] describes the proposed Equine Amenities of the Bridle Path Estates as including an indoor riding arena, five miles of riding trails, outdoor holding pens, and an on-site veterinarian. The Debtor's representative explained that the Equine Amenities are for the benefit of property owners in the Bridle Path Estates, but they will also be accessible to the public for a fee. For the first seven years, or until 80% of the lots are sold, the Debtor will essentially control the HOA, manage and operate the Equine Amenities, and receive the profits therefrom.

The Debtor's exhibits describe four project phases.[29] Phase One contemplates "the creation of an equestrian park and an indoor riding facility . . . to provide a continual revenue stream for Bridle Path Partners LLC."[30] Project Two is the development of the home lots in five phases to include the luxury lots, median income lots, and rental lots.[31] Project Three involves the Design Review Permit regarding the overall architectural design of Bridle Path Estates. Project Four involves the preservation of approximately 80% of Bridle Path Estates as open space for recreational and farming use.[32]

The Debtor argues these various undertakings evidence that Bridle Path Estates is not a single project, but it entails several economic enterprises that include the building lots, the Equine Amenities, and other open space that can leased by third parties for farming. However, in reviewing all of the associated documents with the development of Bridle Path Estates, the Court finds that it is the Debtor's clear intent to create a master-planned, recreational development for a mountain-based community with open space, trails, and amenities to facilitate equine ownership

---

[28] Ex. 6.
[29] Exs. A-D.
[30] Ex. A, at Bates No. 158.
[31] Ex. B, at Bates No. 161.
[32] Ex. D, at Bates No. 165.

and activities for the primary benefit of homeowners in the community.[33] In other words, the Bridle Path Estates is a cohesive, unified project that qualifies as a "Recreational Planned Development" under the Wellsville City Code.

Further, the evidence establishes that the Debtor had essentially no income for the past two years. And while the Debtor may realize some income from the operation of the Equine Amenities, along with the possible lease of open space for farming, it is apparent that the only sufficient source of revenue to repay the creditors with liens on the Property will come from selling the Bridle Path Estates lots and not from these ancillary activities.[34]

D.  The Proposed Development of Vacant Land Can Constitute a SARE

The Debtor relies heavily on the case of *In re Evergreen Site Holdings, Inc.*,[35] in support of its argument that this is not a SARE case. In *Evergreen*, the debtor owned two parcels in a rural area. Some acreage was used as a mobile home park, other acres for an unrelated zipline business, and the rest was vacant. However, the debtor had no present intention to develop any of its property. The Debtor analogizes this case to the present status of its Property in that most of it is undeveloped with only a portion being used under a farm lease. The Debtor further argues that the Court should make the SARE assessment based on the Property's present status as vacant land rather than as the proposed Recreational Planned Development.

However, the facts of *Evergreen* are distinguishable from those here. In *Evergreen*, the properties were not part of a planned development, and the debtor had no intention of developing

---

[33] *See In re Pioneer Austin East Dev. I, Ltd.*, No. 10-30177-HDH-11, 2010 Bankr. LEXIS 2160, at *2, 2010 WL 2671732, at *2 (Bankr. N.D. Tex. July 1, 2010) (holding that even though the debtor's real estate development involved several tracts, purchased and financed separately, they "collectively make up one cohesive housing development and constitute a single property for [purposes of § 101(51B)]").

[34] *See In re Light Foot Group LLC*, No. 11-17945PM, 2011 Bankr. LEXIS 4399, at *8, 2011 WL 5509025, at *3 (Bankr. D. Md. Nov. 10, 2011) (holding that because debtor's primary source of income was from the rental of its properties, incidental income from repair services on the properties did not exclude the project from being a SARE).

[35] 652 B.R. 307 (Bankr. S.D. Ohio 2023).

the parcels in a unified enterprise. This distinction resulted in a ruling in the debtor's favor: "Although courts have held that 'mixed-use' properties can be classified as a SARE, this treatment has been limited to planned developments. The [debtor's] Properties clearly are not a planned development . . . ."[36]

In this case, the Bridle Path Estates are a master-planned, recreational development that has preliminary plat approval and is only delayed in final plat approval due to the water moratorium. The evidence suggests that the moratorium could be resolved by summer 2024, thereby allowing the Debtor to begin making improvements and selling the first phase of Bridle Path Estates lots. Under these facts, the Court agrees with the holding in *In re 2034 Sunset Plaza Drive, LLC*,[37] that in conducting the SARE analysis, it is more appropriate to assess the character of the property based on the debtor's intended, realistic, and likely use of the property rather than its present status as undeveloped land. This holding is consistent with similar cases that involved raw land intended for development or partially completed projects that were not yet producing income.[38]

If Bridle Path Estates was merely at the concept stage of planning with a speculative prospect of fulfillment, the Court would give greater weight to its present status as vacant land

---

[36] *Evergreen*, 652 B.R. at 319 (citing, *inter alia, In re Webb MTN, LLC*, No. 07-32016, 2008 Bankr. LEXIS 691, 2008 WL 656271, at *5 (Bankr. E.D. Tenn. Mar. 6, 2008) (planned development of golf course resort and community was a SARE even though the development contemplated a variety of services, buildings, and businesses)).

[37] 616 B.R. 781 (Bankr. C.D. Cal. 2020).

[38] *See In re ETS of Wash. LLC*, No. 20-00397, 2021 Bankr. LEXIS 268, at *7, 2021 WL 406224, at *3 (Bankr. D.D.C. Feb. 4, 2021) (ruling that for purposes of the SARE analysis, the court should consider the present status of the property as well as its feasible, proposed, future use); *In re Kinard*, No. C/A 01-03621-W, 2001 Bankr. LEXIS 2432, 2001 WL 1806039, at *5 (Bankr. D.S.C. Nov. 16, 2001) (holding that vacant land is not excluded from the SARE definition, especially when the only source of funding to repay secured creditors would come from the sale of the property); *Light Foot Group*, 2011 Bankr. LEXIS 4399, 2011 WL 5509025, at *4 (residential development was SARE even with incidental income from repair services); *In re Pensignorkay, Inc.*, 204 B.R. 676, 681-82 (Bankr. E.D. Pa. 1997) (finding that because the debtor acquired the property with the intention of subdividing it for building and development, it was a SARE case).

rather than it being on the cusp of final approval as a Recreational Planned Development. But given the specifics of this development, its progress toward final approval, and because the only source of revenue to repay creditors will come from the sale of the Bridle Path Estates lots, the Court finds it appropriate, for purposes of assessing whether it is a SARE, to characterize the Property as a planned development in progress, rather than as vacant land with some farm use.

### III. CONCLUSION

The development of Bridle Path Estates involves the entirety of the Property. The Debtor's proposed developments for the Property, consisting of the building lots and the Equine Amenities, are in furtherance of the Debtor's unitary concept of creating an equestrian, recreational community comprised of cohesive and interdependent subdivisions and amenities. The almost exclusive source of revenue to repay secured creditors will come from the Debtor's sale of the Bridle Path Estates lots. For these reasons, the Court finds that the Bridle Path Estates is a single asset real estate project under § 101(51B) that disqualifies the Debtor under § 1182(1)(A) from proceeding under Subchapter V.

The Court will enter a separate Order and Judgment in accordance with this Memorandum Decision and will schedule a status conference in this case to determine how the parties wish to proceed in light of this ruling.

_____END OF DOCUMENT_____



## DESIGNATION OF PARTIES TO RECEIVE NOTICE

Service of the foregoing **MEMORANDUM DECISION** shall be served to the parties and in the manner designated below.

**By Electronic Service:** I certify that the parties of record in this case as identified below, are registered CM/ECF users:

| | |
|---|---|
| Andres Diaz | courtmail@adexpresslaw.com |
| Timothy J. Larsen | tlarsen@adexpresslaw.com |
| Brian M. Rothschild | brothschild@parsonsbehle.com, ecf@parsonsbehle.com, docket@parsonsbehle.com, ecf.alert+Rothschild@titlexi.com, cbmr11@trustesolutions.net |
| Jeremy C. Sink | jsink@kmclaw.com, mcarlson@kmclaw.com |
| Matthew James Burne | matthew.burne@usdoj.gov, James.Gee@usdoj.gov, Lindsey.Huston@usdoj.gov, Rinehart.Peshell@usdoj.gov, Rachelle.D.Hughes@usdoj.gov, Brittany.Dewitt@usdoj.gov |
| United States Trustee | USTPRegion19.SK.ECF@usdoj.gov |

**By U.S. Mail:** In addition to the parties of record receiving notice through the CM/ECF system, the following parties should be served notice pursuant to Fed. R. Civ. P. 5(b).

- None.